•Ruffin, Chief Justice.
 

 A slight examination of the Teports discloses such a fluctuation of opinion upon the ^question presented by this case, that it is at once perceived to be impossible to lay down, what acknowledgment will or will not take a parol promise out of the statute of limitations, without coming in conflict with some previous adjudication, or, more probably, a series of adjudications. We shall not, therefore, pretend to go through the cases, either in an attempt to reconcile them, or to sustain our judgment by the authority of any of them, as being the best precedents. We think it sufficient to remark, that it is now a good many years since the courts of England and of this country, generally began to regard the statute of limitations as a beneficial law, promoting repose, and necessary to secure individuals from -stale demands; demands deemed by the legislature to be unfounded, simply because they are stale. It has .therefore received a benign interpretation, with the view to its execution in its spirit. To insist on the protection provided in it, has not of late been looked on as an attempt to take an uncon-scientious advantage, and avoid the payment of a just debt, although in some instances it may be so; for the legislature, thought it so generally just, that they enable all persons to rely on the lapse of time as a bar. It is not then the duty of judges, as upright men, to withhold that protection, upon evidence, that possibly or probably, the debt had never, in fact, been paid. The principle of con-
 
 *332
 
 structfon, which takes a case out of the statute, upon infer1ence or evidence of the probable subsistence of the debt, is absurdsince satisfaction was always an answer to the action, and the plaintiff ought to make out his case by more evidence than will merely incline the scale to his side. The true principle of the statute is, that time is a presumption, and á strong presumption, of satisfaction. It is not a presumption of the very fact, to be deduced by the country; but it is a definite and positive legal presumption, declared by the legislature, and to be observed by the judiciary. To repel it, the plaintiff ought to give distinct and plain proof that the debt is unpaid; which, according to the statute, can be done only by showing, that
 
 the promise,
 
 on which the action is founded, was
 
 made,
 
 or
 
 renewed,
 
 within the time of limitation. In either case, the promise must necessarily contain, either expressly, or by plain implication, a distinct and explicit engagement to .pay the debt, as stated in the declaration. This may be in terms either absolute or conditional. But still it must be a promise to pay, express or implied.
 

 The great difficulty is in applying tf¡e rule to the evidence given. If the promise be express, that the defendant will pay to the plaintiff a particular sum of money due on a ■previous contract, there is a -duty plainly undertaken, which can be enforced without the hazard of working injustice, or infringing the statute. But when the promise •is not express, the danger of mistaking the meaning of the supposed debtor, and of dep'artiHgfrom the intention of the ■legislature, arises, and presses itself upon the consideration >of the'Cpurt. It is at this point, that the judges of' later times have halted, arid declined going 'all the lengths, to which their predecessors had proceeded. This Court has, in several cases, intimated, tha'f we participated in the impression of our cotemporaries.
 

 It is to be recollected, that every promise alleged in pleading, is'alleged as an express promise, and must be, of course, so found. It may, indeed, be found upon evidence that is not what is called direct or express evidence; provided it satisfy the mind that the party did, at some time, -expressly promise, as alleged. This is what is nailed a
 
 *333
 
 'promise implied by the law. If the original undertaking was more than three years before suit brought, the plaintiff, ■whether he. declares on the subsequent undertaking, as a "new and substantive promise, or on the first as a continuing •promise — of which the latter is evidence — cannot support his allegation by subsequent declarations of the defendant, if, upon the whole, they contain a denial of his liability, and a refusal to pay. It seems to us, therefore, although a person acknowledge that he contracted a debt, and that he has not paid it; yet if he at the same time insist that the statute of limitations exonerates him from liability, and ■upon that footing refuses to pay; .that, in such case, the bar of the statute is not removed. It cannot be implied ■that the party expressly promised to do a ithing, which, it is proved, he expressly refused to do. If the same qualifying words were put into the declaration, every one would say, that in the pleading, they negatived the express promise, therein also contaiued, namely, the promise to pay. They are virtually placed on the record, when the defendant puts in no other .plea but the statute, which need not Contain even a protestation ; yet on demurrer, or on verdict for the defendant, the bar is complete. It must be the same on evidence of such declarations.
 

 So it would seem, on principle, it is if the language of the defendant is so vague, that it cannot be told with certainty to a common intent, whether or not he meant t© renew or continue his original obligation; ■ or to what extent he thereby meant to renew or continue it. For no inference of a promise can rightly be made from words which do not, at the least, import a willingness at the time, or an acknowledged liability to pay. The bare acknowledgment, that the debt was originally due, does not establish that it is still due. Nor even if he make the furthef acknowledgment, that he has not paid it, does it follow that he is willing and promises then to pay it, or has so done at any time after the first promise. The moral obligation is apparent, and is sufficient to sustain a new promise, or keep the old one alive, if re-acknowledged; but it constitutes or proves neither such new promise nof ■-re-acknowledgment. For that purpose, there ought to ‘be something that indicates an existing willingness or
 
 *334
 
 intention to pay, or to remain bound. In this case, we are unable to discover any thing that plainly indicates such an engagement or intention! The words of the defendant’s letter are, “ I do now, and have always appreciated your favours and kindnesses, and they shall not go unrewarded; but I shall want some little time to meet your demand.” In themselves, they do not import a promise to pay money. Judging of the contents of the plaintiff’s letter from that of the defendant, the former, in part, at least, may have been one of congratulation from one brother to another, at the recent propitious change in his circumstances. The repíy acknowledges it to the extent supposed in the plaintiff’s letter, and adds, that it is even greater. Then comes the sentence quoted. The terms of it denote a purpose to requite acts of personal friendship, and, it may be, of pecuniary kid, by something of the like kind. To reward kindness, or return favours, is not language usually applied to the payment of debts. That is all that is in this letter. There is no admission that the plaintiff had advanced money to the defendant, or for his use, much less an engagement to pay it. The latter part of the sentence is relied on by the plaintiff’s counsel — “ but I shall want tíme
 
 to
 
 meet your demand.” So far from being in itself a promise to pay, it is a qualification of the previous part. It is saying, that even what I intend to do by way of “ rewarding your kindness,7'’ I cannot now do.
 

 But if this letter could be’deemed a promise to any purpose, there is an insuperable difficulty in applying it to the debt now claimed, because it has no reference to, or connection with it, as far as we can discover. To what extent is the supposed engagement to be carried — -that is, what debts shall it be taken to revive or create ? It has been much disputed, where there has been an acknowledgment within three years, whether the action is to be on the new or the old promise. We have thought ourselves authorized to say, that it may generally be on the old one, as a continuing promise. But the doubt upon that question goes far to show, what should be the nature of the acknowledgment, which preserves the original undertaking, and gives effect to it, as continuing. The form of pleading is a matter upon
 
 *335
 
 which there may be a different practice, without injury; but it is most material to the rights of the parties, if an acknowledgment, to repel the statute, need not be the same-with, but may be substantially different from one, on which, as a substantive cause of action, there could be a recovery. We think, that in each case, the acknowledgment must be in terms and meaning the same; and that it will not remove the bar of the statute, unless it might be laid in the decía-, ration as a promise to pay the same debt, and to the same-extent as the plaintiff is now seeking to recover. Without such a restriction, all the mischiefs will arise, against which the statute was meant to guard, and persons may be ruined; by strained inferences from loose conversations. Now,, when it is said, that one person promised to pay to another his debt, the questions immediately present themselves — . what debt? to what amount? These questions can be answered satisfactorily only by showing that a certain sum was mentioned, or that there was a reference to something which rendered it certain what debt, or what amount, the party had in his mind. It cannot include any thing that does not appear to have been referred to in it: for nothing but such a reference can explain what the person meant. Without it, the language is altogether indeterminate. Here, the expression is, “ your demand without saying what that is ; or how it arose; or how it may be ascertained. It is impossible to collect from these expressions,, by themselves, what was the nature or amount of that demand. For that reason, no recovery could be had on it, if declared on as an original promise, unless there was other evidence, not given here, to establish what debt or debts in particular the writer then meant — that being the true criterion of the extent of his promise. It is not like a promise to settle accounts. That admits the amount to be uncertain, and engages to make it certain, in a particular way, namely, by computation; and to pay the balance to, be thus ascertained ; for a promise
 
 to account,
 
 is a promise to pay, as well as to adjust the bala'nce by accounting. It is therefore an express promise to pay the balance; unless, as in the case of
 
 Peebles
 
 v.
 
 Mason, 2
 
 Dev. Rep. 367, it be qualified by terms which deny that the balance appearing
 
 *336
 
 on the accounts as they stand, is the true balance. In this case, the claims are altogether on the side of the' P^a'nt^ and consist of three distinct demands; one, them barred by the statute; and two others not. Can it be said, with any certainty, upon this evidence, that the defendant referred to the first, under the word “ demand
 
 V’
 
 Perhaps it might so appear, if the letter of the plaintiff)
 
 to
 
 which the defendant’s was an answer, were before us. If that made a demand of this debt, doubtless the defendant referred also to it. But it is not before us, as-neither party chose or was able to- produce it, or prove its contents. They can be gathered only from- the reply of the defendant ;■ and we see nothing in it from which the jury could believe, upon legal grounds, that there was a demand of this particular debt of two hundred dollars, on the part of the plain-, tiff. The general nature of the plaintiff’s letter, as presumed' from the reply, has already been adverted to. It is not probable, that a brother’s congratulation should be imme-. diately followed by a dun. That must, at the time, have been unnecessary, in the writer’s opinion. At least, it would have looked ungracious; and more like felicitating himself, than his brother, on his accession of fortune. The term “ demand” may therefore not have been used’ in reference to any debt of which payment was
 
 requested
 
 in that letter, but to the demand or claim his brother hadNon the writer, as a benefactor. But supposing the letter to have requested payment of some debt, can it be supposed to have entered into, particulars, and stated each demand, with a view to fish out a promise to pay any particular sum or sums
 
 1
 
 If it had, the plaintiff would have taken care to retain evidence of the contents of the letter. At any rate, it lies on him to show that he did therein demand this debt, before it can be said that the defendant meant to include it in
 
 that
 
 demand. We think there is nothing to justify such an inference; but rather the contrary. Consequently, in our opinion, the plaintiff has failed to show that the defendant’s acknowledgment had any reference to this debt; and therefore it is not taken out of the statute. It is, in this point of view, like that part of the case on which is framed the count on a promise to pay
 
 *337
 
 when the defendant should be able. Such a count is good, and such a promise might repel the statute, if the count were framed on the original undertaking, provided there was proof of the requisite ability. But in each case there must also be proof to show what debt, in particular, was mentioned, or referred to in the promise. It is not sufficient to give evidence that the defendant was indebted to several persons, and declared in general terms, that he meant to pay his debts; and when he got able, he would pay them. To make a promise sensible and binding, it must be shown, both that a debt existed, and that it was referred to by the party.
 

 It may be admitted, that by connecting the terms of the defendant’s letter.with the facts which' we learn
 
 aliunde,
 
 that he had owed the plaintiff for moneys paid at several times to his use, we may suppose it not unlikely, that the plaintiff’s letter proposed some arrangemen tfor his satisfaction ; and that this sum was mentioned with others; and, if so, that it might be inferred, that the defendant meant to assume all the advances, including this. But we think there should be plainly a promise, or a clear acknowledgment of liability, to take a case out of the statute; and that it should refer distinctly to the debt in question. Here the inference depends upon too many mere probabilities, more or less uncertain, to authorize its reception with any such degree of confidence as ought to be necessary to deprive the defendant of the positive protection of a statute. We think, in the language of the Supreme Court of the United States, “ that if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best, to probable inferences, which may affect different minds in different ways, they ought not to go to the jury, as evidence of a new promise to revive the cause of action.” Here, there are no clear terms of engagement to pay any debt and certainly, not this debt in particular. Judgment reversed, and
 
 vejiire de novo,
 

 Per Curiam. Judgment reversed.